IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KYLE CRYTZER, | CASE NO. 1:20-CV-02785-CEF |
| Petitioner, | JUDGE CHARLES E. FLEMING |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| WARDEN DAVID GRAY, | **REPORT AND RECOMMENDATION** |
| Respondent. | |

On December 10, 2020, Petitioner Kyle Crytzer, a prisoner in state custody, filed a *pro se* petition for a writ of habeas corpus. (ECF #1). On June 21, 2021, Respondent David Gray, in his official capacity as Warden of the Belmont Correctional Institution (hereinafter, the State) filed the Return of Writ. (ECF #7). Mr. Crytzer filed a Traverse on November 5, 2021 (ECF #17) and the State filed a Reply to Traverse on November 16, 2021 (ECF #18).

The District Court has jurisdiction over the petition under 28 U.S.C. § 2254(a). On March 25, 2021, pursuant to Local Civil Rule 72.2, this matter was referred to a Magistrate Judge to prepare a Report and Recommendation. (Non-document entry of Mar. 25, 2021). On May 25, 2021, the matter was reassigned to me pursuant to General Order 2021-06. (Non-document entry of May 25, 2021).

For the reasons discussed below, I recommend the District Court **DISMISS** Grounds Two and Four through Fourteen as procedurally defaulted and **DENY** the claims in Grounds One and

Three as meritless. I further recommend the District Court **DENY** a Certificate of Appealability as to all grounds for relief.

## PROCEDURAL HISTORY

### A.  Factual Findings of the Court of Appeals

On direct appeal, the Ohio Court of Appeals, Eleventh Appellate District, set forth the facts of this case. In habeas corpus review, state court factual findings are presumed correct unless the petitioner the rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *see also Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). The Eleventh District determined:

> [¶ 4] On a summer evening in 2017, the victim, Danyelle Mullins ("Ms. Mullins"), planned a "girl's night out" with her friend, Chelsea Tuttle ("Ms. Tuttle"). They were in a downtown Ashtabula tavern when Mr. Crytzer texted Ms. Mullins, his ex-girlfriend and mother of his three-year old child, asking if he could join them. Ms. Mullins agreed, and he met them at the first tavern. The three then went into several more bars, and on to the way to the third, Mr. Crytzer left the two ladies and went in the other direction to meet a friend.
>
> [¶ 5] Ms. Mullins and Ms. Tuttle decided to order a pizza to be delivered to Ms. Mullins' home and stopped at one more bar. The two shared a drink and noticed Mr. Crytzer sitting alone in a booth watching them. Mr. Crytzer walked back with them to Ms. Mullins' home. Ms. Mullins and Mr. Crytzer argued on her porch. He pushed his way inside and grabbed a piece of pizza. The two ladies then pushed him out of the house. Mr. Crytzer was outside on the porch, knocking on the windows and the door. He screamed that "he was gonna light the house on fire."
>
> [¶ 6] Scared, the two ladies ran upstairs. Ms. Mullins called her brother, and Ms. Tuttle called the police. The porch was on fire, melting the siding. Ms. Mullins was able to extinguish the fire with a couple of Gatorade bottles. Investigators found orange-brown deck stain splashed all over the deck and a neighbor's ladder propped up against the side of the house going to a second story window.
>
> [¶ 7] Mr. Crytzer was seen standing shirtless with his dog approximately two houses down, watching the fire, and was apprehended a short while later. His jeans and hands had orange-brown deck stain splattered on them, and he had a lighter in his pocket. At trial, Captain Stephen Chase of the City of Ashtabula Fire Department

("Captain Chase") opined that the fire was caused by "the deck stain that was splattered on the deck," which was ignited by an "open flame device."

[¶ 8] Captain Chase was the fire investigator who interviewed Ms. Mullins regarding the night of the fire, and that interview is the subject of assigned error in this appeal.

### The Court Proceedings

[¶ 9] Mr. Crytzer was indicted on two counts of aggravated arson in violation of R.C. 2909.02(A)(1) and R.C. 2909.02(A)(2), felonies of the first and second degree, respectively; breaking and entering in violation of R.C. 2911.13(B), a felony of the fifth degree; attempted burglary in violation of R.C. 2923.03(A)/2919.19(A)(1), a felony of the third degree; and domestic violence in violation of R.C. 2919.25(A), a misdemeanor of the first degree.

[¶ 10] There were two jury trials in this case. The first jury found Mr. Crytzer not guilty of breaking and entering and attempted burglary, but deadlocked on the remaining counts of aggravated arson and domestic violence. The case was reset for a new jury trial on the remaining counts.

[¶ 11] At the second two-day trial, the state presented evidence and the testimony of Ms. Mullins; Nikki Harson, Ms. Mullins' neighbor who observed the fire; Mr. Crytzer standing watching the fire with his dog a few houses down; Dustin Pal, Ms. Mullins' brother whom Ms. Mullins called during the incident; Ms. Tuttle; Patrolman Eric Massie, who was at the scene; and Captain Chase. Mr. Crytzer presented the testimony of Michael Alan Keyes and Danielle Colicchio, his alibi witnesses.

[¶ 12] After Ms. Mullins testified, the defense asked to play the recorded interview between Captain Chase and Ms. Mullins for the jury. The defense argued Ms. Mullins portrayed herself as a virtuous woman on the stand, but in the interview she admitted to Captain Chase she was quite intoxicated the evening of the fire. Mr. Crytzer argued the statements made by Ms. Mullins in her interview with Captain Chase were inconsistent with her trial testimony. The trial court reviewed the statements and found no inconsistencies.

[¶ 13] Explaining the ruling, the trial court remarked, "I didn't get the impression that someone that claims they have two kids with two different guys and is not married and had five drinks in four different bars in the course of an evening portrayed herself incredibly virtuous. That isn't the impression I got from her; and she didn't deny that she made the statements you claim she did, she just said she doesn't recall." The trial court also noted, "[a]n omission is not an inconsistent statement."

3

[¶ 14] After the trial court denied the request to play the recording for the jury, defense counsel proffered the recording.

[¶ 15] Just before closing arguments, the trial court inquired of the jurors whether they wanted to stay past 4:30 p.m. to deliberate. There were no objections at the start of closing arguments at about 2:30 p.m. The trial court again inquired of the jurors if there was any reason they could not stay past 4:30 p.m., and there were no objections. The closing arguments were made. The jury was charged. The trial court again asked if there was any reason the jurors could not stay to deliberate. The jury retired at 4:01 p.m., deliberated, and returned their verdict in the early evening at 5:13 p.m.

[¶ 16] The jury found Mr. Crytzer guilty on all three counts.

[¶ 17] At the sentencing hearing on October 5, 2018, the trial court denied Mr. Crytzer's pro se motion for a new trial as well as his counsel's motion for new trial. Both motions argued many of the same points, but the trial court allowed Mr. Crytzer to argue on his own behalf. The trial court then sentenced Mr. Crytzer to an eleven-year term of imprisonment on the counts of aggravated arson (Count 2 merged into Count 1) and a concurrent six-month term of imprisonment on the count of domestic violence.

(ECF #9-1 at PageID 637-40; *see also State v. Crytzer*, No. 2018-A-077, 2019 WL 2424038, at *1-3

(Ohio Ct. App. 2019) (*Crytzer I*)).

## B.     Trial Court Proceedings

On August 16, 2017, a grand jury indicted Mr. Crytzer on two counts of aggravated arson

in violation of Ohio Revised Code § 2909.02(A), one count of breaking and entering in violation

of Revised Code § 2911.13(B), one count of domestic violence in violation of Revised Code §

2919.25(A), and one count of attempted burglary in violation of Revised Code §§ 2923.02(A) and

2911.12(A)(1). (ECF #9-1 at PageID 167-69). On August 28, 2017, the trial court appointed

counsel to represent Mr. Crytzer and he pled not guilty. (*Id.* at PageID 170-71). Before trial, the

State gave notice of intent to use evidence and Mr. Crytzer gave notice of his alibi witness (*Id.* at

PageID 175-81). On May 9, 2018, the trial court denied defense counsel's motion to withdraw. (*Id.* at PageID 186).

At the conclusion of the first trial on May 17, 2018, the jury found Mr. Crytzer not guilty of breaking and entering and attempted burglary but could not reach verdicts on aggravated arson or domestic violence. (*Id.* at PageID 190-93). The State pursued the unresolved counts, and a jury trial was set for August 7, 2018. (*Id.* at PageID 194). On August 8, 2018, the jury found Mr. Crytzer guilty of two counts of aggravated arson and one count of domestic violence. (*Id.* at PageID 196-98).

On October 5, 2018, the trial court determined the aggravated arson counts were of similar import, merged them, and sentenced Mr. Crytzer to eleven years in prison. (*Id.* at PageID 562). The court sentenced Mr. Crytzer to six months in jail for domestic violence, to be served concurrently with the sentence imposed for aggravated arson. (*Id.* at PageID 563). In addition, the trial court appointed new appellate counsel for purposes of appeal. (*Id.* at PageID 565).

On October 9, 2018, the trial court permitted trial counsel to withdraw. (*Id.* at PageID 560).

C.    **Direct Appeal**

On October 9, 2018, Mr. Crytzer, through appellate counsel, filed a notice of appeal in the Eleventh District. (ECF #9-1 at PageID 569-71). On November 15, 2018, the Eleventh District granted appellate counsel's motion to withdraw and appointed a new appellate attorney. (*Id.* at PageID 578). Through new counsel, Mr. Crytzer raised the following claims:

1.    The trial court abused its discretion to the prejudice of Mr. Crytzer when it did not allow defense counsel to impeach witness Ms. Mullins by playing portions of her recorded interview with Captain Chase for the jury.

2. Mr. Crytzer was denied effective assistance of counsel because defense counsel did not properly seek to use the recorded interview of Ms. Mullins by Captain Chase to impeach her testimony at trial.

3. The trial court abused its discretion to the prejudice of Mr. Crytzer in making statements to the jury prior to deliberations that implied that they had to reach a verdict in a short period of time.

4. Mr. Crytzer was denied effective assistance of counsel because defense counsel did not object to the trial court's statements to the jury implying that they had to reach a verdict in a short period of time.

(*Id.* at PageID 579-605) (cleaned up). On June 10, 2019, the Eleventh District affirmed the judgment of the trial court. (*Id.* at PageID 636-51; *see also Crytzer I*, 2019 WL 2424038).

On August 9, 2019, Mr. Crytzer filed an untimely notice of appeal and a motion for delayed appeal to the Supreme Court of Ohio. (*Id.* at PageID 652-72). That court granted the motion and ordered briefing. (*Id.* at PageID 700). Mr. Crytzer raised the following propositions of law:

1. A trial court denies a criminal defendant the right to a fair trial when it denies defense counsel the opportunity to present evidence, in the course of said trial, to impeach the witness which is a violation of Ohio Rule of Evidence 607, 608, 609, 612, and 613 and denied appellant due process and a fair and impartial jury trial in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.

2. A trial court errs when it implicitly infers that a jury must deliberate and decide a verdict within a specified time period which denied Appellant his due process rights as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and the right to a fair trial by an impartial jury as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Section 10 and 16, Article I of the Ohio Constitution.

3. Ineffective Assistance of trial counsel: A defendant's trial counsel is constitutionally ineffective in violation of established State and Federal standards where she fails to use known evidence to impeach a witness (in relation to Proposition of Law No.1 1). Additionally, a defendant's trial

6

counsel is constitutionally ineffective when it fails to object to a trial judge's statement and instruction that a jury must deliberate and decide a verdict in a single afternoon (in relation to Proposition of Law No. 2). This is a violation of appellant's rights as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. A defense counsel's failure to preserve errors violates the appellant's rights to a fair trial and to the effective assistance of counsel as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.

(*Id.* at PageID 702) (cleaned up). On December 17, 2019, the Supreme Court of Ohio declined jurisdiction. (*Id.* at PageID 721; *see also State v. Crytzer,* 136 N.E.3d 496 (Ohio 2019) (table)).

## D.     Application to Reopen Direct Appeal

On September 9, 2019, Mr. Crytzer filed an application under Ohio Appellate Rule 26(B) to reopen the direct appeal, claiming alleged ineffective assistance of appellate counsel and raising the following assignments of error:

1.    Appellate counsel was ineffective in his failure to raise all ineffective assistance of trial counsel claims, in violation of the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.

2.    Appellate counsel was ineffective in his failure to anticipate a federal habeas action and so to argue errors on appeal as federal constitutional violations, in violation of the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.

3.    Trial counsel was ineffective as he did not prepare a competent defense to the pending indictment, in violation of the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.

4.    Trial counsel was ineffective when he failed to investigate this case, specifically (but not limited to), as it relates to the accelerant in the alleged arson, in violation of the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.

5.    Trial counsel was ineffective in seeking to exclude the evidence of the accelerant – as Thompson's WaterSeal Corporation states that specifically,

"Per Section 16 of Thompson's WaterSeal SDS, Product 03205318612, as this product has a rating of zero (0) for flammability," in violation of the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.

6.      Appellate counsel was ineffective in failing to file an assignment of error based upon the insufficiency of the evidence to sustain a verdict of guilty, in violation of the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution and the Due Process Clause.

7.      Trial counsel was ineffective in seeking to set aside the verdict and motion for acquittal, pursuant to Ohio Crim. R. 29, at the close of the State's case and prior to the close of defense's case, and after the jury returned a verdict of guilty in violation of the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.

8.      Appellate counsel failed to raise an ineffective assistance of counsel under the doctrine of cumulative error, in violation of the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.

9.      Trial counsel failed to move for a mistrial when the State's expert witness was conferring with the jury ex parte prior to deliberations and the trial court erred in not sua sponte granting a mistrial and that this expert knew the victim and stated so at trial, in violation of the Due Process Clause, the right to a fair trial and in violation of the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.

10.     The trial court erred when it denied multiple requests of trial counsel to withdraw, depriving appellant of a fair trial, due process and the right to effective assistance of counsel, in violation of the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.

11.     Trial counsel was ineffective in failing to enlist expert witness to rebut the State's expert on key issue and relying instead on ill-informed cross-examination of the State's expert, in violation of the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.

12.     The state was vindictive in re-prosecuting Mr. Crytzer following a previous mistrial based upon a hung jury, in violation of Due Process Clause and United States Constitutional Amendment Fourteen.

13.    The trial court committed prejudicial error when he instructed and discharged the jury, when he held the verdict form to the jury, and stated, 'you only have to put one word here.' Thus, instructing the jury to make a finding of "guilty", that being one word, and not guilty is two. This is a violation of due process and the right to a fair trial and the U.S. Constitution.

14.    The Clerk of Court for Ashtabula County has deleted transcripts pages 11-150; 272-274; 394-398; 509-513 and partial page deletions and has refused to provide such to appellant. This denies appellant the right to properly perfect legal briefs and seek review and collateral review, which is a violation of appellant's right to due process and U.S. Constitutional Amendments.

(ECF #9-1 at PageID 722-35) (cleaned up). On December 4, 2019, the Eleventh District denied

Mr. Crytzer's application to reopen the direct appeal. (*Id.* at PageID 736-57). In accordance with

the judgment entry, the Clerk mailed a copy of the Eleventh District's decision to Mr. Crytzer.[1] He

did not appeal the decision to the Supreme Court of Ohio, the deadline for which expired January

21, 2020.

**E.    Motions for Post-Conviction Relief**

On September 26, 2018, Mr. Crytzer filed a *pro se* motion for a judgment of acquittal or a

new trial and a memorandum in support. (*Id.* at PageID 199-268). On September 27, defense

counsel filed a motion for a new trial based on newly discovered evidence. (*Id.* at PageID 271-526).

On September 28, the State moved to strike Mr. Crytzer's *pro se* motion (*Id.* at PageID 269-70) and,

on October 3, opposed defense counsel's motion for new trial (*Id.* at PageID 527-541). On

October 5, 2018, the court denied the motions. (*Id.* at PageID 555-57).

---

[1]    The Ashtabula County Clerk of Courts' website provides public access to case records. In Case No. 2018 CA 00077, the Clerk indicated a copy of the judgment entry was mailed to Mr. Crytzer on December 5, 2019. *See* http://courts.co.ashtabula.oh.us/eservices (last accessed Jan. 4, 2024). This Court may take judicial notice of the proceedings in state courts. *See Lyons v. Stovall*, 188 F.3d 327, 333 n.3 (6th Cir. 1999) (holding that federal courts may take judicial notice of proceedings in other courts of record).

On March 26, 2020, Mr. Crytzer filed a motion in the Eleventh District for leave to file a delayed notice of appeal of the trial court's decision. (ECF #9-1 at PageID 822-26). On June 8, 2020, the Eleventh District denied the motion as untimely and dismissed the appeal. (*Id.* at PageID 830-33).

On November 19, 2019, Mr. Crytzer filed a motion with the trial court to vacate the judgment. (*Id.* at PageID 758-801). On December 17, 2019, after considering the State's opposition, the trial court overruled Mr. Crytzer's motion without a hearing. (*Id.* at PageID 811-14). On January 9, 2020, Mr. Crytzer filed motions for extension of time to respond to, and to strike, the State's opposition. (*Id.* at PageID 815-19). On January 13, 2021, the trial court overruled the motions as moot. (*Id.* at Tr. 821). Mr. Crytzer did not appeal the trial court's decision.

## G.    Transcripts

On May 19, 2020, Mr. Crytzer requested copies of portions of the trial court transcripts that were not provided to him on direct appeal. (ECF #9-1 at PageID 834-35). The trial court denied the motion on September 21, 2020. (*Id.* at PageID 837-38). On October 21, 2020, Mr. Crytzer filed a notice of appeal. (*Id.* at PageID 839-40). On January 7, 2021, due to procedural errors with his merit brief, the Eleventh District ordered Mr. Crytzer to submit his brief by January 27th. (*Id.* at PageID 868-69). Mr. Crytzer did not file a merit brief and on February 16, 2021, the Eleventh District dismissed his appeal for failure to prosecute. (*Id.* at PageID 870).

### FEDERAL HABEAS PETITION

On December 10, 2020, Mr. Crytzer filed this federal habeas petition and raised the following grounds for relief:

**Ground One**: The trial court abused its discretion by denying petitioner the right to present evidence of inconsistent statements by State's witness violating

petitioner's Sixth and Fourteenth Amendment rights and the Due Process guaranteed by the Constitution of the United States of America.

**Supporting Facts**: A defendant has the constitutional right to present a defense and this right naturally requires access to proof. Access to proof includes not only the availability of proof, but the ability to use it. Constitutionally accessible evidence embraces a defendant's right to testify in his own defense, as well as, his right under the compulsory process clause to present or impeach witnesses in his own defense. Court denied Petitioner right to play video statements made to investigator the following day where witness claims she did not recall many facts due to her having been "really drunk" and yet at trial can suddenly remember all sorts of details she claimed she didn't remember the next day, and yet months later can recall with detail. The evidence denied by the Court raises a reasonable probability that its disclosure would have produced a different result. Witness would have been impeached with inconsistent pretrial statements. The Court denial of allowing the jury to hear the evidence was an abuse of discretion and violated Petitioner's right to a fair trial.

**Ground Two**: Trial court time-pressured jury when it instructed jury to deliberate and decide a verdict within a specified time period in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

**Supporting Facts**: The judge placed an implied time constraint that sought to induce a verdict more swiftly than the ends of justice will allow. Petitioner's first trial ended with a hung jury after 2 days of jury deliberations. The second trial's jury was urged to reach a verdict quickly. Jury deliberations did not begin until 4:00 pm and yet judge coerced jury because he emphasized speed over care and inferred that the judge is anxious to conclude the case. Ordinarily, a jury must have deliberated for an extensive period of time and judge must not put any undue time restraints or pressure the jury to "get it done today."

**Ground Three**: Trial counsel was ineffective assistance of counsel for failing to 1) use known evidence to impeach a state witness; and 2) failing to object to trial court judge's time pressures in violation of the Sixth Amendment to the Constitution of the United States.

**Supporting Facts**: Trial counsel was ineffective with regards to Ground One and Ground Two of this Habeas Petition. Had trial counsel used the prior statement recordings to impeach the testimony and objected to the time-pressures of the judge, the likely outcome of the trial would have been different.

**Ground Four**: Appellate counsel was ineffective assistance of counsel for failing to raise all ineffective assistance of counsel claims of trial counsel in violation of the Sixth Amendment of the Constitution of the United States.

**Supporting Facts**: Appellate counsel's performance was deficient in failing to raise the grounds that follow as Assignment of Errors in the direct appeal that are 'clearly stronger' than the limited issues counsel raised on direct appeal. The fact that these issues were not raised on appeal prejudiced Petitioner because it is likely that the Court of Appeals would have reversed the Petitioner's conviction on appeal. Further, appellate counsel failed to raise the issues that were presented as constitutional violations, affecting Petitioner's future ability to pursue these claims in Federal Court.

**Ground Five**: Trial counsel was ineffective assistance of counsel for failing to investigate arson case and prepare a competent defense in violation of the Sixth Amendment to the Constitution of the United States.

**Supporting Facts**: Counsel has a duty to conduct a reasonable investigation and counsel's failure to investigate is one of the most common grounds for finding ineffectiveness. Counsel's decision not to explore or pursue a defense may be unreasonable and deficient. Failure to investigate whether the fire was not caused by arson was ineffective. Counsel's failure to hire an arson expert or educate themselves on techniques of arson investigation constituted defective performance. Under the facts of this case, the failure of counsel to investigate led to counsel to miss key defense arguments, such as, the purported accelerant was not a flammable liquid, NFPA 921 procedures were not followed and no fire investigation was properly conducted, and the possibility of spontaneous combustion of product, per manufacturer's Material Data Safety Sheet warning.

**Ground Six**: Appellate counsel was ineffective in failing to file an assignment of error based on the insufficiency of the evidence to sustain a verdict of guilty in violation of the Sixth Amendment and the Due Process Clause of the U.S. Constitution.

**Supporting Facts**: This is a Due Process claim because the evidence was constitutionally insufficient to sustain a verdict of guilty. Petitioner is entitled to habeas corpus relief because none of the evidence that implicated Petitioner is sufficient to overcome the reasonable doubt created by the alleged accelerant has a rating of ZERO FLAMMABILITY and the deck stain, once dried, if left on a rag can spontaneously combust. Contradictory statements to investigators, police and statements made at both trials conflict. No scientific fire investigation was conducted, and the fire science prosecution presented at trial amounts to junk science. An expert witness for the defense (had it not been for trial counsel's deficiency in not enlisting one) would've presented flawed fire report, investigation and lack of physical evidence collection violated due process and the right to have one's guilt or innocence adjudicated on the basis of evidence introduced at trial. By basing a verdict of guilty on ungrounded conjecture with no evidentiary support

12

was far from sufficient to establish Petitioner's guilt. Opinion of prosecution witness expert, non-certified arson investigator (at the time), who personally knew the alleged victim and her family, who spoke with jurors ex parte along with the prosecutor, was wholly unsupported by the physical evidence was insufficient to support verdict.

**Ground Seven**: Trial counsel failed to move for mistrial when the state's expert witness was conferring with the jury ex parte prior to deliberations, a violation of the Sixth Amendment to the Constitution of the United States.

**Supporting Facts**: Trial counsel was ineffective for failing to move for a mistrial declaration due to contamination by extraneous influence. The state's expert witness was communicating with the jurors outside the courtroom before deliberations. This was established at trial. Extraneous influences include any unapproved private communication, contact, or tampering with a juror during a criminal trial is presumptively prejudicial [*sic*]. Private communications are presumptively prejudicial, between jurors and third persons, or witnesses, or the officer in charge, are absolutely forbidden, and invalidate a verdict. The expert witness was also the lead fire investigator and admitted, on record, to knowing the alleged victim and their family, which is also prejudicial. Additionally, the witness was accompanied by the Prosecutor in the case.

**Ground Eight**: Appellate counsel ineffective assistance for not presenting trial court error of not sua sponte granting a mistrial due to expert witness in court admission that he knew alleged victim and family, and had participated in ex parte communications with jurors in violation of the Sixth Amendment to the U.S. Constitution.

**Supporting Facts**: Although trial judges are given broad discretion in their decisions regarding any extraneous influence on the jury, at minimum, the unapproved private communication, contact, or tampering with the jury during a criminal trial was presumptively prejudicial. The trial court should have granted a mistrial of its own volition, or at the very least it should have held a post-trial hearing in which the defendant had the opportunity to prove actual bias to decide the prejudicial issue. The trial court should have investigated jurors exposed to extraneous influences to determine whether prejudicial impact has actually occurred. During such inquiry into the validity of the verdict, it bars juror testimony about emotional reactions or mental impressions developed during deliberations, but provides exceptions for the introduction of extraneous information or other outside influences. Appellate counsel should have presented this winning issue.

**Ground Nine**: The trial court erred when it denied multiple requests of trial counsel to withdraw, depriving Petitioner the right to effective assistance of counsel in violation of the Sixth Amendment to the Constitution of the United States.

**Supporting Facts**: Petitioner had the same counsel for both times he was tried on this case. The first trial ended with a hung jury. During that portion of the case, Petitioner and counsel had a fundamental breakdown in communication, leading his counsel to put in for a motion to withdraw as counsel. The court refused to allow the attorney to withdraw. The Petitioner was then forced to continue through the second trial with reluctant and uninterested attorney as counsel. As a result, trial counsel failed to properly investigate, failed to object to serious errors, failed to impeach witnesses, failed to present any defense, expert witness, or winnable arguments. Trial counsel attempted again to be withdrawn as counsel and once against the trial court refused to allow it. Denial of the right to counsel of choice is presumptively prejudicial if denial is in error, as it was in this case.

**Ground Ten**: Trial counsel was ineffective for failing to enlist an expert witness to rebut state's prosecution expert witness on key issues relying instead on only ill-informed cross examination in violation of the Sixth Amendment to the Constitution of the United States.

**Supporting Facts**: The trial counsel failed to enlist an expert witness to present contradictory facts, point out that no fire investigation was properly conducted, that the alleged accelerant was non-flammable (and was the main component of the State's case), or to conduct his own investigation, but instead only relied on cross-examination of the state's witness to counter highly scientific matters. With absolutely no training in such defenses, trial counsel had an obligation to conduct an investigation into certain physical evidence that would have undermined the prosecution's theory that the fire was: 1) a result of arson, 2) what started the fire, 3) who started the fire. Petitioner was accused of starting a fire with a non-flammable deck stain because he had deck stain on his clothing and because he had a lighter (and a package of cigarettes) when he was arrested. No scientific facts were presented, only circumstantial evidence and bias.

**Ground Eleven**: The State was vindictive in re-prosecution following a previous mistrial based upon a hung jury in violation of the Due Process Clause and the Fourteenth Amendment to the Constitution of the United States of America.

**Supporting Facts**: Petitioner was tried twice for this case. The first trial ended with a hung jury after nine jury questions and 2 days of deliberation. (purportedly an Ashtabula County record). A second jury was installed for a second trial. Jury was stacked against the Petitioner with questionable juror selections, reluctant counsel assigned by Court (whom had asked to be removed from case and was denied), and time pressures placed upon the prosecution, defense and jury to conclude the case

14

quickly. There is a reasonable likelihood of "vindictiveness" on behalf of the State to retry the Petitioner multiple times, despite the fact that Petitioner was found not guilty of some of the charges in the first trial, a hung jury on the arson and domestic violence charges and without having constitutionally sufficient evidence to sustain a conviction. Vindictiveness against a defendant for successfully standing trial on a prior occasion must play no part in the retrial.

**Ground Twelve**: Trial court has violated Petitioner's right to due process and the Fourteenth Amendment to the Constitution of the United States by continually denying Petitioner access to over 150 pages of deleted transcripts, partial page deletions and continues to prevent Petitioner the right to properly perfect legal briefs, seek review and collateral review.

**Supporting Facts**: It is well documented that the Court refuses to provide deleted portions of trial transcripts. Petitioner has requested the documents be prepared at his expense after the Court notified him, he merely ask [*sic*] for the transcripts. At the time of this filing, the most recent denial for transcripts has been sent to the Ashtabula County Court of Appeals. Within those documents are voir dire of jury members, including jurors with personal or professional ties to prosecution team, fire fighters, tenants, etc, potential grounds for disqualification and bias overlooked by ineffective counsel. The transcripts also contain statements made about ex parte conversations made with jurors with prosecutor and expert witness/lead fire investigator, as well as other potentially winning arguments for overturning case. Having access to transcripts of proceedings is a crucial component of due process.

**Ground Thirteen**: Appellate counsel failed to raise ineffective assistance of counsel claim under the doctrine of cumulative error in violation of the Sixth Amendment of the Constitution.

**Supporting Facts**: The prejudicial effect of counsel's errors should have been presented as an ineffective assistance of counsel claim to be considered cumulatively rather than individually. The cumulative effect of counsel's failure amounted to ineffective assistance even if failures taken individually would perhaps be insufficient to conclude the counseled performance was constitutionally deficient: Trial counsel failed to investigate case, confront witnesses with clear contradiction between trial testimony and statements made to police/911 operator(s) and/or fire investigator. Cumulative error is not traditionally in itself a ground for relief, it is a process to evaluate the prejudice from several underlying constitutional violations. However, appellate counsel prejudiced Petitioner by not presenting the issues under the Doctrine of Cumulative Error.

**Ground Fourteen**: Ashtabula County Court of Appeals violated Petitioner's right to due process and his Fourteenth Amendment to the U.S. Constitution by failing to timely mail the judgment entry to Petitioner's Application to Reopen Appeal

pursuant to App. R. 26(b) causing Petitioner no ability to timely file an appeal to the Supreme Court of Ohio.

**Supporting Facts**: Although a decision was made on December 4, 2019 regarding his Application to Reopen his direct appeal, the court failed to mail the judgment entry until April 20, 2019. Because of this delay, Petitioner did not receive his copy until 138 days had passed causing him the inability to perfect an appeal to the Ohio Supreme Court. Petitioner was prohibited to file a delayed appeal pursuant to Supreme Court Rule 7.01(a)(4)(c) for his 26(b). But for the court's failure to send journal entry, Petitioner would have been able to present his winnable Propositions of Law. This violated Petitioner's constitutional right to Due Process and his rights under the Fourteenth Amendment to the U.S. Constitution.

(ECF #1 at PageID 5-30) (cleaned up).

### STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr. Crytzer's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" and therefore acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). It "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citation and quotation omitted). Accordingly, an application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

Habeas courts review the last explained state-court judgment on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991). For purposes of § 2254(d)(1), clearly established federal law "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "the holdings, as opposed to dicta, of [Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). The state court decision does not need to refer to relevant Supreme Court cases or even demonstrate awareness of them; it is sufficient that the result and reasoning are consistent with Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).

A state court decision is contrary to Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Court on a question of law or if the state court decides a case differently than the Court has decided on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405; *White v. Mitchell*, 431 F.3d 517, 523 (6th Cir. 2005), *cert. denied*, 549 U.S. 1047 (2006). The word "contrary" means "diametrically different, opposite in character or nature, or mutually opposed." *Williams*, 529 U.S. at 405. A state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court decision involves an unreasonable application of the Court's precedent if the state court identifies the correct governing legal rule from the Court's cases but unreasonably applies it to the facts of the state prisoner's case, or if the state court either unreasonably extends a legal principle from the Court's precedent to a new context where it should not be applied or unreasonably refuses to extend that principle in a new context where it should apply. *Williams*, 529 U.S. at 407. The appropriate measure of whether a state court decision unreasonably applied

clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Id.* at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000), *cert. denied*, 531 U.S. 1089 (2001). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Under § 2254(d)(2), state court factual determinations stand unless they are objectively unreasonable given the evidence presented in state court. *Harrington*, 562 U.S. at 100. The Supreme Court has repeatedly emphasized "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18.

Under federal law, "a determination of a factual issue made by a State court shall be presumed to be correct. [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2554(e)(1). Comity principles also require federal courts to defer to a state's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-129 (1982). Federal courts must accept a state court's interpretation of its statutes and rules of practice. *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

The standard is intended to be difficult to meet and reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 142 S. Ct. 1510, 1524 (2022) (describing habeas as an "extraordinary remedy, reserved for only extreme malfunctions in the state criminal justice system and different in kind from

18

providing relief on direct appeal") (cleaned up). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* at 103.

When a properly presented federal constitutional claim was not adjudicated on the merits in the state courts, the reviewing federal court must apply the pre-AEDPA standard, reviewing *de novo* questions of law and mixed questions of law and fact. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007).

## PROCEDURAL BARRIERS TO FEDERAL HABEAS REVIEW

Before a federal court may review a petitioner's habeas claims on the merits, the petitioner must overcome several procedural barriers. These barriers, including exhaustion of state remedies and procedural default, limit a petitioner's access to review on the merits of a constitutional claim. *Daniels v. United States*, 532 U.S. 374, 381 (2001). Put simply, federal courts may review federal claims that were evaluated on the merits by a state court. Claims there were not evaluated on the merits, either because they were never presented to the state courts (*i.e.*, they are unexhausted) or because they were not properly presented to the state courts (*i.e.*, they are procedurally defaulted), are generally not cognizable on federal habeas review. *Bonnell v. Mitchel*, 301 F. Supp. 2d 698, 722 (N.D. Ohio Feb. 4, 2004).

**Exhaustion of Available State Court Remedies**. A court may not grant a petition for habeas corpus unless it appears the petitioner has exhausted available state court remedies, state corrective process is unavailable, or circumstances exist rendering such state process ineffective to protect the petitioner's rights. 28 U.S.C. § 2254(b)(1). Typically, the exhaustion requirement is

19

satisfied when the petitioner fairly presents all claims to the highest court in the state in where
petitioner was convicted, giving the state a full and fair opportunity to rule on the petitioner's
claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). A claim is fairly presented when both the
factual and legal basis for the claim has been introduced to the state courts. *Fulcher v. Motley*, 444
F.3d 791, 798 (6th Cir. 2000). A failure to exhaust applies only where state remedies remain
"available at the time of the federal petition." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir.
2006). In contrast, where state court remedies are no longer available, procedural default, rather
than exhaustion, applies. *Id.*

 **Procedural Default**. Absent a petitioner demonstrating either cause and prejudice or that
failure to review the claim would result in a fundamental miscarriage of justice (discussed below), a
federal court will not consider the merits of procedurally defaulted claims. *Lundgren v. Mitchell*, 440
F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977)).

 There are two avenues by which a petitioner's claim may be procedurally defaulted.
*Williams,* 460 F.3d at 806. First, procedural default occurs if a petitioner "fails to comply with state
procedural rules in presenting his claim to the appropriate state court." *Id.* To determine whether a
petitioner's failure to comply with a state procedural rule bars review of his habeas claims, courts
in the Sixth Circuit perform a four-pronged analysis: (1) whether there is a state procedural rule
applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether
the state court enforced the procedural rule; (3) whether the procedural rule is an adequate and
independent state ground on which the state can foreclose review of the federal constitutional
claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and

that he was actually prejudiced by the alleged constitutional error. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Second, a claim may be procedurally defaulted when the petitioner fails to raise it in state court and pursue it through the state's "ordinary appellate review procedures." *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848 (1991)); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). As addressed above, "[i]f, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id.* Although the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims barring federal court review. *Williams,* 460 F.3d at 806; *Shinn v. Ramirez,* 142 S. Ct. 1718 (2022) ("When [a state prisoner] has failed to [first present that claim to the state court in accordance with state procedures], and the state court would dismiss the claim on that basis, the claim is 'procedurally defaulted.'").

In Ohio, claims must be raised on direct appeal, if possible, or res judicata bars their litigation in subsequent proceedings. *McGuire v. Warden, Chillicothe Corr. Inst.*, 738 F.3d 741, 751 (6th Cir. 2013) (citing *State v. Perry*, 226 N.E.2d 104, 108 (Ohio 1967)). Therefore, a petitioner is not entitled to raise claims in post-conviction proceedings that could have been raised on direct appeal. *Engle,* 456 U.S. at 125 n.28. Consequently, if an Ohio petitioner fails to raise a claim on direct appeal that could have been raised at that time, the claim is procedurally defaulted. *Id.*

21

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 749. Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced. *See Tinsley v. Million*, 399 F.3d 796, 806 (6th Cir. 2005) (citing *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 452 (6th Cir. 2003) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at a developed argumentation, are deemed waived.") (quotation omitted)). A finding of cause and prejudice does not entitle a petitioner to habeas relief; it only allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted. *See Martinez v. Ryan,* 566 U.S. 1, 10 (2012); *see also Coleman*, 501 U.S. at 750.

A showing of cause for the default requires more than the mere proffer of an excuse. Rather, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488; *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012). Neither a petitioner's pro se status nor his ignorance of the law and procedural filing requirements are enough to establish cause to overcome procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004). Furthermore, futility cannot constitute cause for the procedural default of a claim for failure to raise a claim on direct review if it means simply that a claim was "unacceptable to that particular court at that particular time." *Engle v. Isaac,* 456 U.S. 107, 130, n.35 (1982).

To demonstrate prejudice sufficient to overcome procedural default, a petitioner must show more than mere errors in the state trial creating a possibility of prejudice; rather, the petitioner must show that the alleged errors worked to the petitioner's actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions. *Murray*, 477 at 494. There is no prejudice where the petitioner does not show a reasonable probability that the result of the proceeding would have been different. *Ambrose v. Booker*, 801 F.3d 567, 577-78 (6th Cir. 2015).

Ineffective assistance of counsel may serve as cause to excuse a procedural default, but attorney error does not constitute "cause" unless it rises to the level of a constitutional violation of the right to counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). *Murray*, 477 U.S. at 488. The *Strickland* standard requires a defendant to show his counsel's representation fell below an objective standard of reasonableness, and counsel's deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687-94.

Alternatively, a petitioner may overcome procedural default by showing that a fundamental miscarriage of justice will occur if the claims are not considered. *Coleman*, 501 U.S. at 750; *Murray*, 477 U.S. at 495. A fundamental miscarriage of justice occurs in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 495-96; *see also Schlup v. Delo*, 513 U.S. 298, 327 (1995). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). A valid actual innocence claim must be supported by new reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, that was not presented at trial and is so strong a court cannot be confident in the outcome of the petitioner's trial. *Schlup*, 513 U.S. at 324. In other words, a "petitioner must show that it is more

likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327.

**State Law Claims Not Cognizable on Federal Habeas Review.** The District Court lacks jurisdiction over a petitioner's claims for purposes of habeas corpus review if the claims do not "challenge the legality of his custody" based on a "violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). Indeed, "[t]he writ of habeas corpus is not available to remedy errors of only state law." *Smith v. Morgan*, 371 F. App'x 575, 582 (6th Cir. 2010) (citing 28 U.S.C. § 2254(a)); *see also Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998) ("A claim based solely on an error of state law is not redressable through the federal habeas process."). Moreover, merely asserting that a state law error violates the Federal Constitution is not sufficient to justify jurisdiction. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *see also Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("The Due Process Clause . . . safeguards not the meticulous observance of state procedural prescriptions, but the fundamental elements of fairness in a criminal trial.") (quotation omitted); *see also Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted).

Nonetheless, habeas relief may be available if a violation of state law subjected the petitioner to a "fundamentally unfair" trial. *Williams*, 460 F.3d at 816. "[T]he category of infractions that violate fundamental fairness is defined very narrowly," and includes only state rulings that "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bey v. Bagley*, 500 F.3d 514, 521 (6th Cir. 2007) (cleaned up). "A state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S.

24

74, 76 (2005) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)); *see also Allen v. Morris*, 845 F.2d

610, 614 (6th Cir. 1988) (stating that a federal habeas court does not function as an additional

state appellate court reviewing state courts' decisions on state law or procedure). The habeas

petitioner bears the burden of showing "the principle of procedure violated by the rule (and

allegedly required by due process)" is fundamental. *Bey*, 500 F.3d at 521.

DISCUSSION

**I.      Ground One Is Not Cognizable and Otherwise Meritless.**

In Ground One, Mr. Crytzer argues the trial court erred when it refused to play portions of

Ms. Mullins' recorded interview and thus denied him the right to present evidence of inconsistent

statements. (ECF #1 at PageID 41). The State counters that Mr. Crytzer's claim alleges an error of

state law not cognizable on federal habeas review and is otherwise meritless. (ECF #9 at PageID

43).

Generally, an error of state law in the admissibility of evidence does not constitute an

infringement of a federal constitutional right and is not cognizable in federal habeas corpus unless

the evidentiary ruling is so egregious that it results in a denial of fundamental fairness. *See Bugh v.

Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). To the extent Mr. Crytzer's petition alleges a violation

of the Confrontation Clause, such argument is meritless.

The Confrontation Clause guarantees a criminal defendant the right to confront the

witnesses who testify against the defendant. *Davis v. Alaska*, 415 U.S. 308, 315 (1973). Cross-

examination is the "principal means" for assessing a witness' credibility. *Id.* at 314. "Subject always

to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation,

the cross-examiner is not only permitted to delve into the witness's story to test the witness's

25

perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit the witness." *Id.* at 314. The Confrontation Clause is violated when a defendant is "prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences related to the reliability of the witness.'" *Delaware v. VanArsdall*, 475 U.S. 673, 680 (1986), quoting *Davis,* 415 U.S. at 318. The right of cross-examination, however, is not absolute and the defendant is not free to impeach a witness "in whatever way, or to whatever extent the defense might wish." *VanArsdall,* 475 U.S. at 680. Trial judges "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant." *Id.* at 679.

The Sixth Circuit has stated "when it is merely the extent of cross-examination that is limited, the trial judge retains a much wider latitude of discretion. Once cross examination reveals sufficient information to appraise the witnesses' veracity, confrontation demands are satisfied." *Boggs v. Collins,* 226 F.3d 728, 743 (6th Cir. 2000). When the trial court limits the extent of cross-examination, the reviewing court inquires "whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory." *Stewart v. Wolfenbarger,* 468 F.3d 338, 347 (6th Cir. 2006).

The Eleventh District considered Mr. Crytzer's first assignment of error on direct appeal and determined:

[¶ 25] In his first assignment of error, Mr. Crytzer contends the trial court should have permitted him, under Evid.R. 613 ("Impeachment by self-contradiction"), to

26

impeach Ms. Mullins' testimony by introducing portions of Captain Chase's recorded interview with Ms. Mullins.

[¶ 26] Pursuant to Evid.R. 613(B), a party may introduce extrinsic evidence of a witness's prior inconsistent statement to impeach the witness's credibility. The rule states, in pertinent part:

[¶ 27] "Extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply:

[¶ 28] "(1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice require;

[¶ 29] "(2) The subject matter of the statement is one of the following:

[¶30] "(a) A fact that is of consequence to the determination of the action other than the credibility of a witness; (b) A fact that may be shown by extrinsic evidence under Evid.R. 608(A), 609, 616(A), or 616(B); (c) A fact that may be shown by extrinsic evidence under the common law of impeachment if not in conflict with the Rules of Evidence."

[¶ 31] As Mr. Crytzer noted in his brief, "[t]he Rules of Evidence do not define when a statement is inconsistent. However, [a] general definition of an inconsistent statement is: It is enough if the proffered testimony, taken as a whole, either by what it says or by what it omits to say, affords some indication that the fact was different from the testimony of the witness whom it is sought to contradict. Ohio's courts should be liberal when determining whether two statements are inconsistent. A trial court has the discretion to determine whether two statements are inconsistent and whether any difference between prior statements and trial testimony are material inconsistencies."

[¶ 32] Mr. Crytzer argues Ms. Mullins' testimony is inconsistent with her recorded interview with Captain Chase. When defense counsel asked Ms. Mullins what she told Captain Chase regarding the number of alcoholic beverages she consumed and how inebriated she was, Ms. Mullins replied that she did not remember. Later, defense counsel also inquired if she told Captain Chase that she was "very intoxicated and that [she] didn't remember much." Ms. Mullins replied that she did not recall the exact statement, but that she was in a state of shock and had very little sleep since the incident.

[¶ 33] A review of both the recorded interview and Ms. Mullins' testimony reveals the trial court did not abuse its discretion in excluding the recording because there

were no material inconsistencies. During her testimony, Ms. Mullins never denied she was intoxicated on the night of the incident. She specifically stated the number of alcoholic beverages she consumed that night at each establishment. Defense counsel argued the recorded interview presented a very different version of events, but a review of the testimony at trial does not present any inconsistency. There was no dispute that Ms. Mullins was inebriated on the night of the incident. She did not deny or downplay her own actions. The timeline and description of events leading up to the fire as described to Captain Chase and as described to the trial court were consistent.

[¶ 34] Quite simply, there were no inconsistencies of fact, material or otherwise, between the recorded interview and Ms. Mullins's testimony.

[¶ 35] Mr. Crytzer's first assignment of error is without merit.

(ECF # 9-1 at PageID 642-44 (citations omitted); *see also Crytzer I*, at *3-5).

Mr. Crytzer has not established the Eleventh District's determination that the trial court's decision to preclude the recorded statement was contrary to, or unreasonably applied, clearly established Supreme Court precedent, or that the decision unreasonably determined the facts given the evidence presented. *See* 28 U.S.C. § 2254(d). Furthermore, Mr. Crytzer has not overcome the presumption of correctness as to the state court's factual findings. *Id.* at § 2254(e)(1). After review of the trial testimony and Ms. Mullins' recorded statement, the Eleventh District reasonably determined there were no material inconsistencies between them. The Eleventh District's observation that Ms. Mullins testified to the number of drinks she consumed and that no one disputed that she was inebriated indicates the jury had sufficient information to appraise the veracity of her testimony. As such, Mr. Crytzer has not identified a constitutional violation of his right to cross-examine Ms. Mullins.

I recommend the District Court **DENY** Ground One as meritless.

II.     **Ground Two Is Procedurally Defaulted.**

The State argues that Ground Two, in which Mr. Crytzer claims the trial court pressured the jury to return a verdict within a specified time, is procedurally defaulted because Mr. Crytzer did not contemporaneously object to the trial court's statements to the jury. (ECF #9 at PageID 49). For the following reasons, I agree.

Under the *Maupin* analysis, a petitioner's failure to comply with a state procedural rule bars review of federal habeas claims where the state court enforced the procedural rule, and the rule was an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Maupin*, 785 F.2d at 138. Once the court determines the petitioner did not comply with a state procedural rule and the rule was an adequate and independent state ground, the petitioner must demonstrate there was cause for not following the procedural rule and actual prejudice resulted from the alleged constitutional error. *Id.* (citations omitted).

Ohio's rules of criminal procedure contain a contemporaneous objection rule requiring a party object to the giving or failure to give jury instructions before the jury begins deliberating to preserve the alleged error for appeal. Ohio Crim. R. 30. The Sixth Circuit has held that failure to comply with the contemporaneous objection rule constitutes an adequate and independent state law ground barring federal habeas review absent a showing of cause and prejudice. *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2011). A state appellate court's review for plain error is an enforcement of a procedural default, not a waiver of it. *Hinkle*, 271 F.3d at 239; *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006).

In this case, Mr. Crytzer did not comply with the contemporaneous objection rule because defense counsel did not object to the trial court's instructions and comments to the jury. The Eleventh District reviewed the assignment of error for plain error, thus enforcing the state procedural rule. Unless Mr. Crytzer can demonstrate cause for not following the rule and that he was actually prejudiced by the alleged constitutional error, Ground Two is procedurally defaulted.

Along with his claim that the trial court abused its discretion in making certain comments to the jury, Mr. Crytzer alleged an independent claim of ineffective assistance of counsel for not objecting to the trial court's comments, herein raised as Ground Three. (ECF #9-1 at PageID 581). Ineffective assistance of counsel may serve as cause to excuse a procedural default, but attorney error does not constitute "cause" unless it rises to the level of a constitutional violation of the right to counsel under *Strickland*. *Murray*, 477 U.S. at 488.

The Eleventh District reviewed the abuse of discretion claim for plain error. It determined:

[¶ 38] "While performing his or her duties, a trial judge must recognize the effect his comments may have upon a jury." "There is no doubt that juries tend to give great deference to a trial judge's words." "Therefore, certain improper remarks by a trial judge may prejudice a defendant's constitutional rights to a fair trial."

[¶ 39] "Generally, in determining whether a trial judge's remarks were prejudicial, the courts will adhere to the following rules: (1) The burden of proof is placed upon the defendant to demonstrate prejudice, (2) it is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for, (3) the remarks are to [be] considered in light of the circumstances under which they are made, (4) consideration is to be given to their possible effect upon the jury, and (5) to their possible impairment of the effectiveness of counsel."

[¶ 40] Mr. Crytzer contends that the trial court prejudiced the jury by inquiring whether they "really want to come tomorrow" and then stating, "so, we're gonna stay here and get it done." The trial court explained, "[t]he plan is for you guys to wrap this thing up today so that you don't have to come back tomorrow. So, is there any reason why you can't stay even if we go – if we go past 4:30? Most people want to get it done. That's my experience. I'm seeing no Jurors to be in

30

acknowledgement, that you just want to stay and conclude this today so that you don't have to come back. So that will be what we're going to do."

[¶ 41] The record reflects the trial court inquired at three separate points before closing arguments began whether there would be any problem with jurors staying until they reached a verdict, so they would not have to return to court the following day. At each point, no juror expressed a problem with the plan for deliberations. Closing arguments began at about 2:30 p.m. The jury began their deliberations at about 4:00 p.m. and returned their verdict in about an hour and fifteen minutes.

[¶ 42] In *Casino*, the Eighth District Court of Appeals addressed a similar situation, where the trial court indicated it "hoped the matter could have a verdict that day," and proposed that the jury eat their lunches while deliberating and avoid asking unnecessary questions of the court in order to save time. The court found that these statements did not indicate any pressure being asserted upon the jury.

[¶ 43] In this case, apart from the statements about staying past 4:30 p.m., the trial court, as in the *Casino* case, made other comments indicating his desire for the jury to reach a calculated and well-considered decision. Thus, in *Casino*, the trial court "cautioned the jurors to only decide the case after discussing the matter thoroughly with their fellow jurors. He further provided that they 'should not surrender honest convictions in order to be congenial or to reach a verdict solely because of the opinions of your fellow jurors.'" *See also, State v. Hobbs*, 8th Dist. Cuyahoga No. 81533, 2003-Ohio-4338, ¶ 31 ("* * * the judge merely instructed the jury that he was 'hopeful' that a decision could be reached that day. He did not urge the jury to hurry its decision and stated that they would be permitted to go home and come back the next day or another day if they could not reach a verdict. He did not comment on the defendant's guilt or the strength of the State's case. * * * [T]here is no evidence that defendant was prejudiced by the trial court's statements.")

[¶ 44] The trial court in this case properly instructed and cautioned the jurors in a nearly identical manner to the trial court in *Casino*. He told the jurors: "You must not be influenced by any consideration of sympathy or prejudice. It is your duty to carefully weigh the evidence, to decide the disputed questions of fact, to apply the instructions of law to your findings, and to render your verdict accordingly. Your duty as Jurors is to arrive at a just verdict. * * *"

[¶ 45] Further, the trial court instructed the jurors to ask questions and inquire if they had difficulty remembering the instructions they were given. He concluded by saying "Your initial conduct upon commencing deliberations is important. It is not wise to express immediately a determination or insist upon a certain verdict. * * *"

31

[¶ 46] Under these circumstances, we do not find the trial court's comments coercive or prejudicial in any manner. Mr. Crytzer's third assignment of error is without merit.

(ECF #9-1 at PageID 644-47; *see also Crytzer I*, at *5-6) (citations omitted). The Eleventh District then addressed the ineffective assistance of counsel claim under *Strickland*:

[¶ 48] "In determining whether counsel's performance constitutes ineffective assistance, an appellate court must find that counsel's actions fell below an objective standard of reasonableness and that appellant was prejudiced as a result." "In performing its review, an appellate court is not required to examine counsel's performance under the first prong of the *Strickland* test if an appellant fails to prove the second prong of prejudicial effect." "In demonstrating prejudice, an appellant must show that there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different." Further, "[a] strong presumption exists that a licensed attorney is competent and that the challenged action is the product of sound trial strategy and falls within the wide range of professional assistance."

* * *

[¶ 50] In his fourth assignment of error, Mr. Crytzer argues he was denied effective assistance of counsel because defense counsel did not object to the trial court's statements to the jury implying that they had to reach a verdict in a short period of time.

[¶ 51] Because we have separately addressed the underlying grounds for these two assignments of error and found them to be without merit, Mr. Crytzer's claims of ineffective assistance of counsel based upon the same grounds are likewise without merit.

(ECF #9-1 at PageID 647-48; *see also Crytzer I*, at *6) (citations omitted).

The Eleventh District analyzed Mr. Crytzer's claim that the commentary violated his constitutional right to a fair trial and, after considering the trial court's instructions to the jury, reasonably determined the claim was meritless because the instructions were not coercive and did not prejudice him. Because his alleged constitutional claim was meritless, the Eleventh District reasonably concluded, in accordance with *Strickland*, that trial counsel's failure to object to the trial

court's commentary was not ineffective assistance of counsel. Therefore, the ineffective assistance of counsel claim does not constitute cause for the procedural default of Ground Two. *See, e.g., Murray,* 477 U.S. at 488 (attorney error does not constitute "cause" unless it rises to the level of a constitutional violation of the right to counsel under *Strickland*). Unless Mr. Crytzer can show that failure to review Ground Two on the merits will result in a fundamental miscarriage of justice in accordance with *Schlup,* it is procedurally defaulted.

Mr. Crytzer does not meet the *Schlup* standard because he has not asserted a valid claim of actual innocence that is supported by new reliable evidence not presented at trial. *Schlup,* 513 U.S. at 324 (holding a valid actual innocence claim must be supported by new reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, that was not presented at trial that is so strong a court cannot have confidence in the outcome of the petitioner's trial). Mr. Crytzer maintains he is innocent because the alleged accelerant, the deck stain, was not flammable and would not ignite. (ECF #17 at PageID 1518). The Eleventh District reviewed the allegedly exculpatory evidence and stated:

> Attached to Mr. Crytzer's application is a letter he received from the deck stain company, Thompson's WaterSeal Corporation, which he believes proves the deck stain could not have been used as an accelerant.
>
> * * *
>
> Although it is outside the record and cannot be considered, we note the letter from Thompson WaterSeal, in addition to stating the deck stain has a "Flammability rating of 0 as 'materials will not burn,'" also provides the flammability warning that Thompson WaterSeal puts on every container of deck stain. Thus, the letter goes on to say that "[p]er our container: DANGER: Rags, steel wool, other waste soaked with this product, and sanding residue may spontaneously catch fire if improperly discarded. Immediately place rags, steel wool, other waste soaked with this product, and sanding residue in a sealed, water-filled, metal container. Dispose of in accordance with local fire regulations."

33

> The letter from Thompson WaterSeal supports the evidence presented at trial by way of the testimony of Ashtabula Fire Department Captain Stephen Chase ("Captain Chase") as to the flammability of the deck stain. Captain Chase testified that he investigated the specific desk stain, which was "combustible - having a flashpoint of over 100 degrees" versus "flammable - having a flashpoint of under 100 degrees." A "combustible" material, such as the deck stain at issue, will ignite if it comes into contact with an open flame. Based on his experience and investigation, Captain Chase opined the deck stain was ignited by an open flame, such as a cigarette lighter.

(ECF #9-1 at PageID 742-43). Because the Thompson WaterSeal letter supports the fire captain's testimony and the State's theory of the case, Mr. Crytzer has not presented evidence so strong a court cannot have confidence in the outcome of his trial; therefore, Mr. Crytzer has not established that failing to review his claims on the merits will result in a fundamental miscarriage of justice, *i.e.*, the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 495-96.

Mr. Crytzer has not overcome procedural default of Ground Two. Therefore, I recommend the District Court **DISMISS** Ground Two as procedurally defaulted.

## III.     Ground Three Is Meritless.

In Ground Three, Mr. Crytzer claims his trial counsel was ineffective by failing to use known evidence to impeach a witness and failing to object to the trial court's comments to the jury regarding deliberations. As to the former, the Eleventh District determined Mr. Crytzer did not establish a constitutional violation regarding trial court's decision to deny his request to play Ms. Mullins' recorded statement to the police. Because there is no underlying constitutional violation, counsel cannot be ineffective for failing to raise the claim on direct appeal. An attorney's failure to make a frivolous or meritless objection does not constitute ineffective assistance of counsel. *See Smith v. Bradshaw*, 591 F. 3d 517, 523 (6th Cir. 2010); *Harris v. United States*, 204 F.3d 681, 683

(6th Cir. 2000). With respect to the latter and as addressed in Ground Two, the Eleventh District reasonably determined the trial court's comments did not violate Mr. Crytzer's right to a fair trial; therefore, it was not ineffective assistance of counsel to not object to those comments. *Id.*

I recommend the District Court **DENY** Ground Three as meritless.

## IV. Grounds Four Through Thirteen Are Procedurally Defaulted.

The State argues Mr. Crytzer has procedurally defaulted Grounds Five through Thirteen because he failed to comply with state procedural rules and failed to pursue his claims through the ordinary appellate review process. (ECF #9 at PageID 82, 94, 101, 111, 118, 129, 137-38, 145, 152).

### A. Failure to comply with state procedural rules (Grounds Five through Ten)

Mr. Crytzer raised the underlying alleged constitutional violations presented in Grounds Five through Ten for the first time in his 2018 post-conviction motion for a new trial. (ECF #9-1 at PageID 199-268). The trial court denied the motion. Over a year later, Mr. Crytzer filed a motion for delayed appeal of the decision. The Eleventh District denied the motion as untimely under Rule 5(A) of the Ohio Rules of Appellate Procedure, emphasizing that Mr. Crytzer could have appealed the denial of his motion for new trial during his direct appeal. (ECF #9-1 at PageID 832) ("Not only could Mr. Crytzer have appealed the denial of his motion for new trial in his previous appeal, but his reasons do not justify an almost one year and five month delay in filing the present appeal.").

Under the *Maupin* analysis, a petitioner's failure to promptly file under Appellate Rule 5(A) bars review of his federal habeas claims where the state court enforced the procedural rule and the rule was an adequate and independent state ground on which the state can rely to

foreclose review of a federal constitutional claim. *Maupin*, 785 F.2d at 138; *see also Stone v. Moore*, 644 F.3d 342, 347-49 (6th Cir. 2011). Unless Mr. Crytzer can show cause to excuse the procedural default and the constitutional violation resulted in actual prejudice to him, or that failure to review the claim will result in a fundamental miscarriage of justice, Grounds Five through Ten are procedurally defaulted, barring federal habeas review.

Mr. Crytzer does not assert cause to excuse this default in his Traverse, but in his motion for delayed appeal he claimed his lack of legal training and restricted access to the law library at the Belmont Correction Center delayed his appeal. (*See* ECF 9-1 at PageID 831). But both a petitioner's ignorance of the law and procedural requirements for filing a timely notice of appeal and the restriction on access to the prison law library are insufficient to establish cause to excuse the default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004).

Addressed in Ground Two, Mr. Crytzer has not presented new reliable evidence sufficient to show that failing to review this claim on the merits will result in a fundamental miscarriage of justice, *i.e.,* the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 495-96.

Because Mr. Crytzer cannot overcome procedural default of the claims in Grounds Five through Ten, I recommend the District Court **DISMISS** them. In any event, these Grounds for Relief are procedurally defaulted for other reasons.

### B.    Failure to pursue claims through ordinary appellate review procedures

Mr. Crytzer raised the claims in Grounds Four through Thirteen in his application to reopen the direct appeal. (ECF #9-1 at PageID 722-31). He did not appeal the Eleventh District's denial of the application to the Supreme Court of Ohio. Therefore Mr. Crytzer has procedurally

defaulted these claims. *Williams*, 460 F.3d at 806 (a claim may be procedurally defaulted when the petitioner fails to raise it in state court and pursue it through the state's ordinary appellate review procedures); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). Moreover, a petitioner does not preserve the underlying constitutional claims by raising them as ineffective assistance of counsel claims in his Rule 26(B) application. *See Norton v. Sloan*, No. 1:16CV854, 2017 WL 525561, at *14 (N.D. Ohio Feb. 9, 2017) (quoting *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) ("[A] Rule 26(B) application based on ineffective assistance cannot function to preserve the underlying substantive claim" because "the two claims are analytically distinct[.]")).

I now consider whether Mr. Crytzer has established cause and actual prejudice to excuse the procedural default. For cause, he claims the Eleventh District's Clerk did not send him a copy of the appellate court's judgment denying his application to reopen the direct appeal until April 20, 2020, preventing him from timely appealing to the Supreme Court of Ohio. (ECF #1 at PageID 13). The appellate court's alleged delay and Mr. Crytzer's resulting inability to pursue these claims also forms the basis for his due process claim in Ground Fourteen. (*Id.* at PageID 66).

Courts recognize that a petitioner's failure to receive timely notice of an unfavorable state court decision may potentially constitute cause to excuse a procedural default. *See, e.g., Nicholson v. Morgan*, No. 3:20-cv-2545, 2022 WL 4072473, at *9 (N.D. Ohio Aug. 11, 2022), *report and recommendation adopted*, 2022 WL 4017507 (N.D. Ohio Sept. 2, 2022) (noting petitioner "could arguably establish cause to excuse his procedural default because notice of the March 25, 2019 order denying his Rule 26(B) application to reopen was not mailed to him directly and he did not

receive notice of the decision until long after the 45-day window within which to appeal to the Ohio Supreme Court"); *Brown v. Miller*, No. 4:16 CV 600, 2017 WL 10574328, at *11 (N.D. Ohio Oct. 30, 2017), *report and recommendation adopted*, 2018 WL 5023745 (N.D. Ohio Oct. 17, 2018) (concluding that petitioner had potential cause to excuse procedural default where petitioner asserted that he was unaware of court of appeals decision). But as noted above, the state court docket confirms that a copy of the Eleventh District's judgment was mailed to Mr. Crytzer on December 5, 2019. Mr. Crytzer's bare assertion that he did not receive notice of the judgment does not overcome the affirmative evidence present in the state court's docket and does not establish cause to excuse procedural default.

Mr. Crytzer also alleges closures, holidays, and COVID-19 restrictions limited his access to the prison law library. (ECF #1 at PageID 13). But this is of no import. Mr. Crytzer admits he did not file a notice of appeal or supporting memorandum to the Supreme Court of Ohio because the Rules of Practice of the Supreme Court of Ohio do not allow for delayed appeals brought pursuant to App. R. 26(B). (*Id.*, citing S. Ct. Prac. R. 7.01(A)(4)(c)). It is not clear how limited access to the prison law library prevented him from timely filing an appeal when he never had reason to draft the appeal and therefore would not require those resources. In any event, restrictions on access to the prison law library are insufficient to constitute cause to excuse the default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004).

As noted above, Mr. Crytzer has not presented evidence supporting his argument that a fundamental miscarriage of justice will occur if the claims are not reviewed. Because Mr. Crytzer cannot establish cause and prejudice to excuse the procedural default and has not shown a

fundamental miscarriage of justice will occur, Grounds Four through Thirteen are procedurally defaulted. I recommend the District Court **DISMISS** them.

## V. Ground Fourteen Is Procedurally Defaulted.

Ground Fourteen is procedurally defaulted because Mr. Crytzer failed to raise it in state court and pursue it through the state's "ordinary appellate review procedures." *Williams*, 460 F.3d at 806. More accurately, Mr. Crytzer failed to raise the issue in state court at all. Claims never raised in state court are defaulted, barring federal habeas review. *Franklin v. Bradshaw*, 695 F.3d 439, 454 (6th Cir. 2012). Addressed above, Mr. Crytzer's arguments are insufficient to establish cause and prejudice or a fundamental miscarriage of justice to overcome procedural default. Therefore, I recommend the District Court **DISMISS** Ground Fourteen as procedurally defaulted.

### CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability (COA) and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has determined a petitioner's constitutional claim to be without merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable

39

whether the district court was correct in its procedural ruling. *Id.* A showing that the appeal would succeed on the claim is not required to grant a certificate of appealability. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Mr. Crytzer has not made a substantial showing that he was denied any constitutional right. Jurists of reason would not find it debatable whether the grounds for relief are valid claims of the denial of constitutional rights. Similarly, no procedural ruling appears to be in error. Therefore, I recommend the District Court **DENY** Mr. Crytzer a certificate of appealability with respect to any ground.

## Conclusion and Recommendation

For the foregoing reasons, I recommend the District Court **DISMISS** the Petition as to Grounds Two and Four through Fourteen and **DENY** the claims in Grounds One and Three as meritless. Finally, I recommend the District Court **DENY** a Certificate of Appealability as to all grounds for relief.

Dated: January 4, 2024

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

### Objections, Review, and Appeal

**Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge.** *See* **Fed. R. Civ. P. 72(b)(2);** *see also* **28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.**

**Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a**

40

subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).